## Columbian Mut. Life Ins. Co. v. Hamlet.
### (Decided March 3, 1936.)

WEBB & WEBB for appellant.

HOLIFIELD, McDONALD & BOAZ for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Raymond B. Hamlet was named the beneficiary in a policy of insurance for $800 issued July 23, 1927, by the Columbian Mutual Life Insurance Company upon the life of Ora B. Hamlet. The insured died July 14, 1934, the insurer denied liability, and the beneficiary brought an action to recover the amount of the policy, less certain indebtedness of the insured to the company. The case was submitted on an agreed statement of facts, and the court rendered judgment in favor of the plaintiff for the sum of $653.82, and the defendant has appealed.

The policy contained a total and permanent disability benefit clause in which the company agreed, upon receipt at its home office of satisfactory proof that the insured had become totally and permanently disabled, as therein defined, to pay in lieu of all other benefits one-tenth of the value of the policy immediately upon acceptance or receipt of satisfactory proof of such total and permanent disability. It was further provided in this clause that one-tenth of the value of the policy would be payable upon each anniversary of such payment, upon acceptance of satisfactory proofs of continued total disability, until the entire amount of the policy should have matured in that manner, and, should the death of the insured occur before the entire amount of the policy had matured by the payment of a sufficient number of annual installments to exhaust its value, the remaining portion was to be paid to the beneficiary in similar installments upon satisfactory proof of death. The policy also contained a provision that the company, without any action upon the part of the insured, should apply the loan value of the policy to any unpaid premiums or other indebtedness of the insured as long as the loan value set forth in the table of loan or surrender values was sufficient to cover such loan and all other indebtedness of the policy.

The stipulated facts in substance are: The company on August 12, 1932, made a loan on the policy to the insured for the sum of $99.40, which became due August 12, 1933. After the loan on the policy was made, the insured made proof of permanent and total disability, which was accepted by the company, and on February 14, 1933, it paid to the insured the sum of $80, that being one-tenth of the face value of the policy, by crediting same on the loan. By reason of this credit, the insured was entitled to a credit of unearned interest in the sum of $2.37, leaving a balance of $17.03 due on the loan when it fell due on August 12, 1933. The premium on the policy was paid to May 1, 1933, but no premiums thereafter were paid. At the date of the insured's death, on July 14, 1934, the unpaid premiums on the policy amounted to $44.80, and the interest theron to $3.53, or a total of $48.33, and the unpaid balance on the original loan made to the insured, with interest thereon, amounted to $17.85. On September 7, 1933, the loan value of the policy was $106.95. The company took the position that on that

date the indebtedness of the insured to the company, including the disability benefit payment of $80 made February 14, 1933, equaled the loan value of the policy, and in January, 1934, it notified the insured that her policy was lapsed. The insured did not file proof of disability February 14, 1934, or any time thereafter, and the only disability benefit payment made was the one made February 14, 1933.

The sole question involved is whether the company had a right under the policy to charge against the loan value of the policy the disability benefit of $80 paid by it to the insured. If it did, the loan value of the policy was exhausted and the policy lapsed on September 7, 1933. If it did not have that right, the loan value of the policy was sufficient to keep the policy in effect until after the death of the insured.

Section 11 of the policy provides for an automatic premium loan whenever the insured fails to pay any premium when due. It reads:

"1. After this policy has been in full force two full years then and without action on the part of the Assured, any premiums hereon or other indebtedness which shall not be paid when due or within the period of grace hereinbefore provided, shall be charged as an automatic policy loan with interest at 6% per annum, payable annually in advance, as long as the then loan value in accordance with the Table of Loan and Surrender Values hereinafter set forth is sufficient to cover such loan and all other indebtedness hereon.

"2. If at any time the then loan value, less all indebtedness hereon, be not sufficient to pay the entire premium when due annually in advance, such value shall be used to pay the premium for a proportionate period. No grace will be allowed under this provision. At any time while this policy is thus continued in force, payment of premiums may be resumed without any evidence, of insurability being required by the Company."

Section 12 sets out three options, of which the insured may elect one upon any default of the payment of any premium after three full years' premiums have been paid, and then reads:

"Any indebtedness to the Company placed on the

policy will reduce the Surrender Value thereby and the Paid Up Insurance and the amount at risk under continued insurance will be proportionately reduced.''

Subsection 5 of section 13 of the policy reads: ''5. Indebtedness—Any indebtedness to the Company against the policy shall be deducted in any settlement thereof. All Disability and Accident Benefits granted in this Policy are chargeable against the Policy and to be deducted therefrom at death or from any claim arising hereunder.''

It is appellant's contention that a disability benefit payment made under section 2 of the policy constitutes an indebtedness within the meaning of subsection 5 of section 13, and is deductible from the loan value of the policy as is any other indebtedness. The contract of insurance is not susceptible of such a construction. The disability benefit was an indebtedness of the company to the insured, and it was satisfied when the amount was credited on the loan on the policy which the company had made to the insured. The policy provides that its face value shall be reduced to the extent that disability benefit payments are made, but it nowhere says that these payments shall constitute an indebtedness of the insured to the company. After the company made the disability benefit payment of $80, the face value of the policy was $720 instead of $800. At most, the reduction of the loan, or surrender, value of the policy would have been proportionate, or one-tenth, which left a sufficient amount to keep the policy in effect until after the death of the insured.

Appellee relies especially on American National Ins. Co. v. Jones, 83 S. W. (2d) 428, decided by the Texas Court of Civil Appeals. The policy in that case contained a total and permanent disability clause, and the insured brought an action to recover upon the disability provisions of the policy. The company had made a loan of $289.17 on the policy to the insured, and it was merely held that any recovery under the disability benefit provisions of the policy should be credited with the amount of the loan, since the policy provided that ''any indebtedness due the company hereon will be deducted in any settlement hereunder, upon the death of the insured or in payment of any other benefits.'' It was not held that benefit payments constituted in-

debtedness of the insured to the company, and consequently reduced the loan value of the policy to that extent.

Appellant insists that, even though the policy remained in effect until after the death of the insured, the amount due the beneficiary is payable in annual installments of $80 each, and not in a lump sum. Had the insured submitted proofs of her continued total disability on February 14, 1934, and had the company accepted the proofs and paid to her one-tenth of the value of the policy, appellant's contention would be sound, but the payment was not made, and there is no proof that the disability existed on the anniversary of the first payment. The policy, therefore, reverted to its original status. No question of mutual mistake is presented.

The judgment is affirmed.